# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2025-3086
Lower Tribunal No. 2025-DR-002837-O

_____

BRUNO ROBERTO RODRIGUEZ,

Petitioner,

v.

KATHRYN LOUISE RODRIGUEZ,

Respondent.

_____

Petition for Writ of Certiorari to the Circuit Court for Orange County.
Craig A. McCarthy, Judge.

April 10, 2026

PRATT, J.

The petition for writ of certiorari, docketed December 12, 2025, is dismissed without further discussion.

We write to address the petition's concerning citation to non-existent cases, as well as the petition's concerning citation to actual cases which do not stand for the legal propositions asserted in the petition. From all appearances, the petition bears the hallmarks of having been produced by Karin Gerardin—an attorney—on

behalf of Petitioner with the assistance of generative artificial intelligence ("AI")[1] but without Ms. Gerardin having put sufficient guardrails into place to ensure the accuracy of the cases cited in the petition or the accuracy of the legal propositions for which the cases are cited in the petition.

The petition filed by Ms. Gerardin on behalf of Petitioner cites to a number of cases. Some of the cited cases both exist and are cited for legal propositions that the cited cases actually represent. Some of the cited cases do not exist. And some of the cited cases are cited for legal propositions that the cited cases do not actually represent.

We recently addressed a similar scenario where a pro se litigant submitted a filing to this Court that cited to non-existent cases, as well as cited to actual cases which did not stand for the legal propositions asserted in the filing. *See Hessert v. Hessert*, No. 6D2026-0121, 2026 WL 785016 (Fla. 6th DCA Mar. 20, 2026). In *Hessert*, we acknowledged that "[c]ourts across the United States, including Florida's appellate courts, are currently grappling with an influx of court filings

---

[1] "Generative AI[—i.e., generative artificial intelligence—]are deep-learning models that compile data to generate statistically probable outputs when prompted. . . . Generative AI can create original images, analyze documents, and draft briefs based on written prompts. Often, these programs rely on large language models. The datasets utilized by generative AI large language models can included billions of parameters making it virtually impossible to determine how a program came to a specific result. . . . [G]enerative AI can hallucinate or create inaccurate answers that sound convincing." Fla. Bar Ethics Op. 24-1, at 1-2 (Jan. 19, 2024) (citations and internal quotation marks omitted).

produced by pro se litigants and attorneys alike with the assistance of AI that cite non-existent cases or that cite actual cases for inaccurate legal propositions." *Hessert*, 2026 WL 785016, at *1. There, we surveyed a number of relevant authorities—including the Florida Rules of Appellate Procedure, the Florida Rules of General Practice and Judicial Administration, the Rules Regulating the Florida Bar, the Florida Code of Judicial Conduct, and case authorities—and in doing so we made a number of observations, including that "[a]lthough AI is a relatively new technology, and although AI may have appropriate uses in the legal field, there is simply no excuse for pro se litigants or attorneys to file briefs, motions, and other filings in Florida's appellate courts that cite to cases without first performing the necessary and simple steps of (1) cite-checking the cases to ensure they actually exist and (2) cite-checking the cases to ensure they actually represent the legal propositions asserted"; that "[t]his is true regardless of whether such filings are prepared with or without the assistance of AI"; that "Florida's appellate courts, like other courts, require pro se litigants and attorneys to sign their filings and thereby represent the accuracy thereof"; that "[m]embers of the Florida Bar—who are officers of the court—must also comply with their ethical duties when they sign and make filings in Florida's appellate courts"; that "Florida's appellate courts have the authority and the duty to maintain the integrity of the proceedings before them, including where appropriate sanctioning pro se litigants and attorneys who fail to

3

follow the Florida Rules of Appellate Procedure and court orders"; and that "Florida's appellate courts also have the authority and the duty to safeguard the integrity of the legal profession, including where appropriate referring an attorney to the Florida Bar for potential disciplinary action." *Id.* at \*1-2 (citations omitted). We also made a number of forewarnings, including that "[a]ll filers in cases before the Sixth District Court of Appeal should take notice: our Court will remain vigilant to ensure that filings signed by pro se litigants and attorneys alike—including filings prepared with or without the assistance of AI—both: (1) do not cite to non-existent cases and (2) do not cite to cases for inaccurate legal propositions"; that "[i]f and when any such erroneous filings are made in a given case before our Court, filers on the opposite side of the case should point out such errors to our Court either in their responsive filings or via motion"; that "[t]o avoid the potentiality of the issuance of orders to show cause, pro se litigants and attorneys should remember their obligation to cite-check all cases cited in their filings in Florida's appellate courts prior to making their filings—regardless of whether their filings are prepared with or without the assistance of AI"; and that "[p]ro se litigants and attorneys should also remember that they cannot satisfy their aforementioned obligation by relying upon AI to cite-check the cases cited in their filings." *Id.* at \*2 (citations omitted). Ultimately, in *Hessert* we issued an order to show cause why the pro se litigant in that case should

4

not be sanctioned for filing a petition that contained non-existent cases and that cited to cases for inaccurate legal propositions. *Id.* at *3.[2]

In the petition at issue in this case, Ms. Gerardin has provided citations to a number of cases, some of which exist and some of which do not. Ms. Gerardin is directed to provide copies of each and every case cited in the petition that actually exists with highlighted quotations or language that support the assertions made in the petition. These cases shall be filed in a supplemental appendix, indexed for each case, with this Court within ten days of the issuance of this opinion. Ms. Gerardin shall follow the same procedure within ten days of the issuance of this opinion regarding the reply she filed on behalf of Petitioner in this case, as Petitioner's reply to Respondent's response to the petition suffers from the same defects as those contained in the petition.

In light of the foregoing, Ms. Gerardin is directed to show cause within ten days of the issuance of this opinion: (1) why she should not be sanctioned for filing a petition (and a reply) that contains non-existent cases and that cites to cases for inaccurate legal propositions and (2) why she should not be referred to the Florida Bar for potential discipline.

---

[2] *Hessert* involved a pro se litigant rather than an attorney. Nevertheless, we find the reasoning of *Hessert* to be persuasive, and we adopt and incorporate the reasoning of *Hessert* in full in this opinion.

PETITION DISMISSED. ORDER TO SHOW CAUSE ISSUED.

STARGEL and MIZE, JJ., concur.


Karin S. Gerardin, of Gerardin Law Firm, P.A., Tavares, for Petitioner.

Shane T. Herbert, of Shane T. Herbert Law, Windermere, for Respondent.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED